[Cite as *In re A.C.H.*, 2011-Ohio-5595.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY


IN THE MATTER OF: :

    A.C.H., A.M.H., AND
    A.R.H. : Case No. 11CA2

Adjudicated Dependent :
 Children.

          : DECISION AND JUDGMENT ENTRY

          :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     Robert W. Bright, 530 2nd Avenue, Gallipolis, Ohio 45631

COUNSEL FOR APPELLEE:     Jeff Adkins, Gallia County Prosecuting Attorney, and Pat
    Story, Gallia County Assistant Prosecuting Attorney, 18
    Locust Street, Gallipolis, Ohio 45631

_____

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 10-19-11

ABELE, J.

    **{¶ 1}** This is an appeal from a Gallia County Common Pleas Court, Juvenile Division,

judgment that awarded permanent custody of A.C.H. (born September 15, 1994), A.M.H. (Born

November 15, 1995), and A.R.H. (July 22, 1998), to Gallia County Children Services (GCCS).

    **{¶ 2}** R.H., the children's natural father and appellant herein, assigns the following errors for

review:

        FIRST ASSIGNMENT OF ERROR:

        "THE TRIAL COURT ERRED IN TERMINATING THE FATHER
        [R.H.]'S PARENTAL RIGHTS WITHOUT SUFFICIENT BASIS OR

EVIDENCE TO JUSTIFY SUCH A DECISION."

SECOND ASSIGNMENT OF ERROR:

"THE FATHER, [R.H.], RECEIVED INEFFECTIVE ASSISTANCE
OF COUNSEL AS A RESULT OF HIS COUNSEL'S FAILURE TO
REQUEST THAT [R.H.] BE BROUGHT TO THE HEARING FROM
PRISON."

{¶ 3} On November 18, 2009, GCCS filed a complaint that alleged the children to be dependent and also requested emergency custody. In an affidavit, GCCS caseworker Russ Moore stated that the Gallia County Sheriff's Department contacted him on November 17, 2009 to advise him that appellant admitted that he had sexually abused a minor female who is a neighbor and that he also admitted that a "sexual incident" occurred between appellant and his oldest daughter. On that same date, the court granted GCCS emergency custody of the children. At a shelter care hearing, the court granted GCCS temporary custody of the children pending further order.

{¶ 4} On January 14, 2010, the trial court adjudicated the children dependent. The court found that appellant "has allegedly confessed to law enforcement to having sexual contact with both an underage neighbor girl and his oldest daughter." The court continued the temporary custody order.

{¶ 5} Southern Ohio Behavioral Health therapist Rebecca Casto wrote in a letter dated January 15, 2010 that she does not believe that appellant should have any contact with the oldest daughter, "as she is anxious about his being out of jail and has verbalized being fearful of him. Her behaviors have improved considerably and contact with father at this time would most likely trigger these behaviors again." She further advised the court that the other two children wish to have contact with appellant, and recommended that the court permit supervised telephone contact.

{¶ 6} On March 11, 2010, the trial court entered a dispositional order that continued the children in GCCS's temporary custody.

{¶ 7} On July 20, 2010, the trial court held a review hearing. During the hearing, the court was advised that appellant had pled guilty to gross sexual imposition and that he expected to be placed in prison for at least six months and up to one year. Appellant advised GCCS that his mother had agreed to take custody of the oldest daughter and that some relatives in Nevada had agreed to take custody of the other two children until appellant could resume custody. GCCS agreed to investigate these placement options before filing for permanent custody.

{¶ 8} On December 7, 2010, GCCS filed a permanent custody motion.

{¶ 9} On January 26, 2011, the court held a permanent custody hearing. At the start of the hearing, the court observed that appellant was in prison and had not requested to be present at the hearing.

{¶ 10} GCCS caseworker Kristi Smith testified that the case plan required appellant to: (1) obtain mental health services and a psychological evaluation; (2) attend parenting classes; and (3) undergo substance abuse counseling. She stated that appellant completed the parenting classes before he was sentenced to prison, but he did not complete a mental health evaluation or substance abuse counseling. She further explained that before his imprisonment, appellant had difficulty maintaining a stable, permanent home for the children. She stated that he had been evicted from his home three times.

{¶ 11} Regarding the children, Smith testified that the oldest daughter has had at least two suicide attempts. GCCS placed her in a therapeutic foster home in March 2010, and her condition has improved. Smith explained that the oldest daughter has a likelihood of being adopted–that the

foster family is "very interested" in adopting her.   Smith stated that the child has done well in the home: "[She] loves the home, loves the family * * * and feels like she has a home now with two parents and that she's able to * * * get her mental health needs and her * * * feel supported there and able to be a * * * a typical teenager."

{¶ 12} Smith also testified that the other two children are "very adoptable."   She stated that the male child has related to her that he is tired of being in foster care and wants to have a permanent home.

{¶ 13} Smith also stated that she evaluated relative placement options.   According to Smith, appellant's parents informed her at the outset that they could not take custody of the children.   She informed appellant's parents of the procedure to follow to be involved in the case, but they did not follow the procedure.   She stated that she sent appellant's counsel forms for the Nevada relatives.   Smith explained that appellant's counsel was supposed to provide GCCS more detailed information so that GCCS could send the forms interstate, but he did not.   Smith stated that she contacted the Nevada relatives by telephone.   They advised her that they would take the children until appellant was released from prison.

{¶ 14} Rebecca Casto, the children's therapist, testified that the children should not be returned to appellant.   She explained:

> "[The oldest daughter will] never * * * feel safe with her father again. * * * [Y]ou know she's in a very good place. * * * I think her being returned back to her dad is just going to, she's going to revert back to those very self-destructive * * * she was suicidal when I first started working with her, had been hospitalized * * * I think she's going to revert right back to that. * * * [The oldest boy] * * * he has a lot of anger toward dad * * * which we continue to work on but * * * you know I think some of that is just normal you know he, he's not happy with dad's behaviors and the things that dad has done.   * * * [The youngest daughter] * * * she definitely idolizes her father, but she has indicated that she wouldn't feel safe * * * being with

her father on a full time basis."

{¶ 15} Richard Hedges, the children's guardian ad litem, recommended that the court award GCCS permanent custody.   Hedges stated that the male child

"is extremely angry with his father because of the circumstance to the extent that [the child] has to prove himself * * * and to everybody else that he and quote/unquote 'his family' are worthy.   Because I think he feels a really strong social stigma on you know what has happened because of his dad['s conviction for gross sexual imposition and other criminal charges]."

{¶ 16} Regarding the oldest daughter, Hedges stated:

"[The oldest daughter], any child who has attempted suicide twice * * * especially * * * I mean if you think about it contextually she attempted suicide the first time after Thanksgiving.   Thanksgiving should be a time when you have strong family ties, those ties are emphasized, the relationships between all of the families are emphasized and she sees that and she attempts suicide.   That to me is a very dramatic indicator of a problem * * * and so you know that hopefully has been corrected.   Again, it's clearly a self-esteem, part of it would be a self-esteem issue. * * * * My understanding is that [she] was and did witness some of the sexual allegation that was done to her friend.   And witnessing a father, your own father * * * having some kind of sexual activity with your peer, your 14, 13, 12 year old you know peer has got to be traumatic.   And I've seen that time after time after time in this situation and others."

{¶ 17} With respect to the youngest daughter, Hedges testified:   "[The youngest child] is doing well grade wise, but the fact that she is scared of her father because of sexual abuse or sex * * * or the allegation of the possibility of sexual abuse you know, for a child of that age to be concerned about that is a problem."

{¶ 18} Appellant's mother testified on his behalf.   She testified that she does not believe appellant is guilty of a criminal offense.   She stated that she shares a good relationship with the three children.   She explained that approximately two and one-half years ago, the children lived with her and their grandfather for a little over one year.   She stated that she tried to contact the

children's lawyer in Athens but was unsuccessful.   She further stated that GCCS did not tell her what she would need to do to seek custody of the children.   But later, she testified that Smith told her that she would need to undergo a background check and complete a home study in order to seek custody.   She admitted that she has breast cancer and that her husband is in remission from bladder cancer, but she stated that despite their ages (she is seventy and her husband is seventy-two) and health concerns (she and her husband each has a pacemaker; both have arthritis; she needs a knee replacement; he has congestive heart failure and chronic obstructive pulmonary disorder), they are able to care for the children.

{¶ 19} Smith testified on rebuttal that she does not believe that appellant's parents should have custody of the children due to their poor health and appellant's mother's belief that appellant is innocent.   Smith stated that she requested appellant's mother to undergo a background check "and she said bullshit, I'm their grandmother, I don't have to get a background check."

{¶ 20} On February 9, 2011, the trial court awarded GCCS permanent custody of the three children.   The court found that the children cannot and should not be returned to either parent within a reasonable time, and that it is in the children's best interests to award GCCS permanent custody.

{¶ 21} The trial court also found that the children cannot or should not be returned to appellant within a reasonable time for the following reasons: (1) appellant has not received a psychological assessment or mental health counseling; (2) appellant admitted that he had inappropriate sexual contact with a child while his daughter witnessed.   The court stated:

> "The Court will not return custody of children to a sexual offender without the offender first obtaining a significant amount of mental health counseling. Custody would only then be returned to the offender upon assurances from mental

health professionals that it was safe to do so.   It is clear from the testimony of the children's mental health counselor that she believes that it would be detrimental to return the children to the custody of their father."

{¶ 22} The court found that the children cannot or should not be returned to their mother because the mother did not contact GCCS after she was served with the dependency complaint. The court found that the mother demonstrated a lack of commitment to the children by failing to regularly support, visit, or communicate with them.

{¶ 23} With respect to the children's best interests, the court found that: (1) the guardian ad litem recommended that the court award GCCS permanent custody; (2) the children have been in GCCS's custody for over one year; (3) the parents have failed to correct the problems that led to dependency complaint; (4) the children need a legally secure permanent placement that can only be established by awarding GCCS permanent custody; (5) the children have bonded with foster parents; and (6) GCCS believes that the children have a strong likelihood of being adopted.

{¶ 24} This appeal followed.

I

{¶ 25} In his first assignment of error, appellant asserts that the trial court erred by awarding GCCS permanent custody when the record does not contain clear and convincing evidence to support the award.   Appellant additionally argues that the trial court should have given temporary custody of the children to his parents.   He asserts that his parents were willing and able to take temporary custody of the children until appellant would be able to resume custody. Appellant further asserts that the trial court erred by proceeding with the permanent custody hearing without ordering his presence and that his absence rendered him unable to meaningfully participate in the case.

A

STANDARD OF REVIEW

{¶ 26} Generally, an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment.  In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶40, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.  Thus, our review of a trial court's permanent custody decision is deferential.  See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶17.  Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law."  Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.  As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273:  "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."  Davis v. Flickinger (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159.

B

STANDARD FOR GRANTING PERMANENT CUSTODY

{¶ 27} A trial court may not grant a permanent custody motion absent clear and convincing

evidence to support the judgment.   The Ohio Supreme Court has defined "clear and convincing evidence" as:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.   It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.   It does not mean clear and unequivocal."

In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, 55 Ohio St.3d at 74.   In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."   Schiebel, 55 Ohio St.3d at 74, 564 N.E.2d 54.

C

PERMANENT CUSTODY PRINCIPLES

{¶ 28} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right"to raise his or her children.   Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169; see, also, In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829.   A parent's rights, however, are not absolute.   See D.A. at ¶11.   Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'"   In re Cunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App.1974), 300 So.2d 54, 58).   Thus, the state may terminate parental rights when a child's best interest demands such termination.   D.A. at ¶11.

{¶ 29} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.   The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.   See R.C. 2151.414(A)(1).   Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

> (A) To provide for the care, protection, and mental and physical development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.

D

PERMANENT CUSTODY FRAMEWORK

{¶ 30} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 31} Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.

E

R.C. 2151.414(B)(1)

{¶ 32} In the case at bar, the trial court determined that R.C. 2151.414(B)(1)(a) applied, in that the children cannot or should not be placed with either parent within a reasonable time.

{¶ 33} R.C. 2151.414(E) requires the trial court to consider "all relevant evidence" and sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time.   See R.C. 2151.414(B)(1)(a).   As relevant in the case at bar, if the court finds the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
> * * * *
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
* * * *
(16) Any other factor the court considers relevant.

{¶ 34} In the case at bar, the record contains substantial credible and competent evidence to support the trial court's finding that the children cannot, or should not, be placed with either parent within a reasonable time.   The children's mother has had no contact with them in several years, and she did not participate in the trial court proceedings.   Her actions, or lack thereof, demonstrate a lack of commitment towards her children.

{¶ 35} With respect to appellant, our review of the evidence reveals that he complied with the case plan requirement to take parenting classes, but that he did not complete a mental health evaluation or substance abuse counseling.   Due to the nature of his criminal conduct (gross sexual imposition involving a minor), GCCS found it particularly important for appellant to obtain mental health counseling so that he could learn how to act appropriately with his children, especially his daughter who witnessed the sexual act.   The trial court also noted that given the nature of appellant's criminal act, mental health counseling was necessary before the court would ever allow the children to be returned to appellant's custody.   Thus, some evidence supports the court's finding that appellant failed to remedy the conditions that led to the children's removal, i.e., undergoing counseling for his sexual behaviors.

{¶ 36} The trial court also determined that "other relevant factors" existed that made it inappropriate to return the children to appellant's care within a reasonable time.[1]   Appellant

---

[1]   The court did not recite these "other relevant factors" in its judgment entry.     In the absence of a proper Civ.R. 52 request, however, it was not required to do so.     See, e.g., In re E.W., Washington App. Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, at ¶22.

admitted to having inappropriate sexual contact with one of his teenage daughter's friends while his daughter watched. It is inconceivable that his daughter was not traumatized by witnessing this event. Appellant's conduct demonstrates, at the least, poor judgment. The trial court could have concluded that appellant's criminal act was so egregious that it would not be possible to ensure the children's future safety were they returned to appellant's care. Moreover, the trial court could have determined that this criminal act caused too much emotional trauma for the children's relationship with their father to ever be repaired in such a manner that they could be returned to his custody. Although appellant argues that his son and younger daughter were not as traumatized because they did not witness the crime, and therefore they should be returned to him, we find this claim dubious. Furthermore, the record contains testimony that the youngest daughter is frightened of her father, even though she did not witness the sexual abuse. Also, the son is angry with his father as a result of his father's criminal conduct. Thus, his claim that these two children did not suffer trauma simply because they did not witness his criminal act is specious at best.

{¶ 37} Although the trial court cited R.C. 2151.414(E)(13)–a parent's repeated incarcerations–in support of its finding, the record, however, is not clear regarding appellant's prior incarcerations. Nevertheless, the record, does contain clear and competent evidence regarding the other two factors that the trial court cited–R.C. 2151.414(E)(1) and (16). Consequently, we disagree with appellant that the evidence fails to show that the children cannot or should not be returned to either parent within a reasonable time.

F

BEST INTERESTS

{¶ 38} R.C. 2151.414(D) requires a trial court to consider specific factors to determine

whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2]

---

[2] R.C. 2151.414(E)(7) to (11) provide as follows:

> (7) The parent has been convicted of or pleaded guilty to one of the following:
> (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
> (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
> (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
> (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
> (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
> (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

{¶ 39} In the case at bar, we believe that competent and credible evidence supports the trial court's finding that awarding GCCS permanent custody would serve the children's best interests. Regarding the first best interest factor (the child's interaction and interrelationships), the evidence shows that the male child holds hostility towards his father due to his father's criminal actions, and that he feels that he needs to prove himself worthy. The male child has made progress while in foster care. The oldest daughter who witnessed her father's crime is afraid of her father. She had multiple suicide attempts before her placement in a therapeutic foster home. She now loves her foster family. The youngest child also is afraid of her father.

{¶ 40} With respect to the next best interest factor (the child's wishes), the children did not testify at the hearing, but the guardian ad litem recommended that the court award GCCS permanent custody. The oldest daughter and the son both expressed a desire for a permanent placement.

{¶ 41} Regarding the third best interest factor (the child's custodial history), the evidence shows that the children had been in GCCS's temporary custody for thirteen months when GCCS filed for permanent custody and for a little over fourteen months at the time of the permanent

---

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense[.]

custody hearing.   Before that, they lived with their father in various homes.

{¶ 42} With respect to the fourth factor (the child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody), the evidence demonstrates that the children need a legally secure permanent placement.   They have been in GCCS's temporary custody for over one year due to their father's criminal conduct and incarceration.   At the time of the permanent custody hearing, the father was incarcerated and expected to remain incarcerated for at least another six months and up to one year.   GCCS was unable to secure placement with any relatives.   Furthermore, the relatives who allegedly expressed interest in taking custody of the children stated that they could do so only until appellant was released from prison and deemed suitable to have custody of the children.   Whether appellant would ever be deemed suitable to have custody of the children again is questionable, given the testimony of the children's mental health therapist.   The trial court was not required to deny these children the permanency that they need in order to provide appellant the chance to prove, upon his release from prison, that he can mend the fences with his children, who are afraid of him and traumatized by his criminal actions.   To deny GCCS permanent custody would only prolong the uncertainty and instability that these children have faced at least since GCCS obtained temporary custody in November 2009.   In the case at bar, the only way for the children to obtain a legally secure permanent placement is by granting GCCS permanent custody.   We do not believe that the trial court was required to experiment with the children's best interests in order to permit appellant to prove that he has been rehabilitated sufficiently to resume custody of his children.   Courts have recognized that:

"'* * * [A] child should not have to endure the inevitable to its great

detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability.   To anticipate the future, however, is at most, a difficult basis for a judicial determination.   The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * *   The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"

In re Bishop (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (quoting In re East (1972), 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346).   We therefore disagree with any suggestion that the court should have granted appellant's relatives temporary custody of the children pending appellant's unpredictable rehabilitation and ability to regain custody of the children.

{¶ 43} Appellant also complains that GCCS failed to consider relative placement.   It appears, however, that GCCS did consider appellant's suggested relative placements, i.e., his parents and relatives in Nevada, but that the potential relative placements did not follow through with the requirements to be considered as placements.   Appellant's mother allegedly refused to submit to a background check, stating that it was "bullshit," because she is the children's grandmother.   In any event, the trial court did not deem the grandparents suitable relative placement due to their multiple health problems.   The Nevada relatives apparently did not complete the appropriate paperwork.

{¶ 44} Moreover, while a court that is considering a permanent custody motion possesses the discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody, see R.C. 2151.353(A)(3), the statute does not require a juvenile court to consider relative placement before granting the motion for permanent custody.   See In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA11; In the Matter of Knight (Mar. 22, 2000), Lorain App. Nos. 98CA7258 and 98CA7266.   In other words, a juvenile court need not find, by clear and

convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request.   Id.   Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law, and the willingness of a relative to care for the child does not alter the statutory factors to be considered in granting permanent custody. See Dyal; In re Jefferson (Oct. 25, 2000), Summit App. Nos. 20092 and 20110; In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest.   See Dyal; Patterson; Benavides.   The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.   In re Adoption of Ridenour (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055.   Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody.   See In re Schaefer, 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶64; see, also, In re Dyal, Hocking App No. 01CA11, 2001-Ohio-2383; see, also, In re Lewis, Athens App. No. 01CA20, 2001-Ohio-2618; In re Wilkenson, (Oct 12, 2001), Hamilton App. No. C-010402, C-010408; In re Knight (March 22, 2000), Lorain App. Nos. 98CA72589, 98CA726698.   Consequently, the trial court had no duty to first consider placing the children with appellant's relatives before granting GCCS permanent custody.

G

APPELLANT'S ABSENCE FROM THE HEARING

{¶ 45} Within his first assignment of error, appellant further argues that the trial court erred by proceeding with the permanent custody hearing without ordering that appellant be conveyed from prison.

{¶ 46} A trial court possesses discretion to proceed with a permanent custody hearing in a parent's absence.   See In re S.G., 22.   In S.G., the court determined that the trial court did not abuse its discretion by proceeding with a permanent custody hearing in a parent's absence when counsel represented the parent at the hearing, a complete record was made, and the parent failed to demonstrate that the parent would have presented evidence that would have affected the outcome of the case.   The same scenario applies in the case sub judice.   Counsel meaningfully represented appellant at the hearing, a complete record was made, and appellant has failed to show what testimony or evidence he would have offered that would have changed the outcome of the case.

{¶ 47} Moreover, as appellee notes, the record demonstrates that appellant received notice of the hearing date.   The record contains no evidence that he requested to be present at that hearing.   We have previously held that a parent does not suffer a violation of the parent's due process right to be present and heard at a permanent custody hearing when the parent receives proper notice of the hearing and fails to request transport from prison.   See In re T.F., Pickaway App. No. 07CA34, 2008-Ohio-1238, ¶13.

{¶ 48} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶ 49} In his second assignment of error, appellant argues that trial counsel did not provide effective assistance of counsel.   Appellant complains that counsel failed to request that he be brought before the court for the permanent custody hearing and failed to arrange for appellant to participate by alternate means.

{¶ 50} The right to counsel, guaranteed in permanent custody proceedings by R.C.

2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel.   See In re Wingo (2001), 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (citing In re Heston (1998), 129 Ohio App.3d 825, 827, 719 N.E.2d 93).   "'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.'" Id. (quoting Heston).

{¶ 51} To reverse a trial court's judgment based upon a claim of ineffective assistance, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.   See Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Noling (2002), 98 Ohio St.3d 44, 65, 781 N.E.2d 88; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Both prongs of this test need not be analyzed, however, if a claim can be resolved under one prong.   See State v. Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52; State v. Loza (1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082.

{¶ 52} Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   Id. at 687; see, also, Bradley, paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); State v. Peeples (1994), 94 Ohio App.3d 34, 44, 640 N.E.2d 208 (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley,

paragraph two of the syllabus; see, also, Strickland, 466 U.S. at 687; Noling; Bradley, paragraph

three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient

performance, the defendant must prove that there exists a reasonable probability that, were it not

for counsel's errors, the result of the trial would have been different.").   When an appellate court

considers an ineffective assistance of counsel claim, the court "'will not presume prejudice but will

require an affirmative showing thereof.'"   In re Z.S., Lawrence App. No. 10CA16,

2010-Ohio-5038, ¶35, quoting Matter of Shelton (Mar. 16, 1993), Highland App. No. 818.

{¶ 53} In In re J.M., Licking App. No. 10-CA-97, 2010-Ohio-6075, the court considered a

situation similar to the case at bar.   In J.M., the appellant asserted that his counsel was ineffective

for failing to request that he be conveyed from prison for the permanent custody hearings.   The

appellant based his argument upon a decision from the Second District Court of Appeals, In re

S.A., Clark App. No. 07-CA-110, 2008-Ohio-2225, ¶5, where the court stated:

> "Counsel's failure to protect Rogan's right to meaningful participation in the
> permanent custody hearing caused the trial to be fundamentally unfair.   'When
> there is no possibility for a fair trial, it is inherently prejudicial to the integrity of the
> trial * * * * [T]here is no possibility that a fair trial, one with a reliable outcome,
> resulted from the proceedings herein.'   Roque [In re, Trumbull App.
> No.2005-T-0138, 2006-Ohio-7007] supra, at ¶13.   See, also, Strickland, supra, at
> 686 ('[c]ounsel's conduct so undermined the proper functioning of the adversarial
> process that the trial cannot be relied on as having produced a just result.')   Thus,
> the second prong of Strickland is met.   Because Rogan was denied the effective
> assistance of trial counsel, we sustain her Second Assignment of Error."

{¶ 54} The J.M. court did not find S.A. dispositive.   Rather, the court found that the

appellant could not have possibly suffered any prejudice as a result of his absence at the hearings

when he "had not met any of the case plan requirements and would not be available to parent for

seven years."   Id. at ¶31.

{¶ 55} In the case at bar, even if we assume for purposes of argument that counsel performed deficiently by failing to request appellant's presence at the permanent custody hearing, appellant failed to put forth any evidence to show how his absence prejudiced the outcome of the case.   He has not explained how his presence would have changed the court's decision to award GCCS permanent custody.   Rather, he alleges that his absence rendered the proceeding unfair. Appellant's counsel was present and engaged in thorough cross-examination and presentation of witnesses.   We believe that it is speculative to suggest that appellant's presence at the trial, or his live trial testimony, would have changed the outcome.   Moreover, given appellant's failure to comply with all of the case plan's requirements and the nature of his sexual offense, it is implausible to believe that anything he could have done or said at the permanent custody hearing would have altered the court's decision.   Consequently, because appellant did not demonstrate any prejudice, his ineffective assistance of counsel claim must fail.

{¶ 56} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules

of Appellate Procedure.

Harsha, P.J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

**<u>NOTICE TO COUNSEL</u>**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.