[Cite as *In re H.W.*, 2016-Ohio-7794.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF:

|  |  |  |
|---|---|---|
| H.W., | : | Case No. 16CA3565 |
|  | : |  |
|  | : |  |
| Adjudicated Dependent Child. | : |  |
|  | : | <u>DECISION AND</u> |
|  | : | <u>JUDGMENT ENTRY</u> |
|  | : |  |
|  | : | RELEASED 11/16/2016 |

<u>APPEARANCES</u>:

Aaron M. McHenry, Chillicothe, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jennifer L. Ater, Ross County
Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Hoover, J.

{¶1}   Appellant, C.P., appeals from the judgment of the Ross County Common Pleas
Court, Juvenile Division, awarding appellee, South Central Ohio Job and Family Services,
Children's Division ("SCOJFS"), permanent custody of her minor child, H.W. For the reasons
that follow, we affirm the trial court's judgment.

**I. Facts**

{¶2}   H.W. was born on April 9, 2014. The father of the child is not known. A short
time after H.W.'s birth, it was alleged that C.P. left the infant child in the familial residence
without adult supervision, when she fled from law enforcement who had arrived at the house to
serve a warrant on her. As a result of this incident, as well as a previous history between C.P. and
the children services agency, SCOJFS filed a complaint alleging that H.W. was a dependent

child. SCOJFS was granted temporary custody of H.W. on June 23, 2014. The trial court subsequently adjudicated H.W. dependent on October 23, 2014, and ordered the child to remain in SCOJFS's temporary custody. The order of temporary custody was extended on several occasions.

{¶3}   A case plan was filed with the trial court on September 24, 2014. The case plan was amended several times after its initial filing. Throughout the duration of the case C.P. was offered services to complete her goals toward reunification with the child.

{¶4}   On November 30, 2015, SCOJFS filed a motion requesting permanent custody of H.W. SCOJFS asserted that H.W. had been in its temporary custody for more than twelve of the past twenty-two months and that awarding it permanent custody would serve the child's best interest.

{¶5}   The trial court held a hearing to consider SCOJFS's permanent custody motion on June 21, 2016. At the time of the hearing, C.P. was incarcerated and serving a two-year sentence imposed in May 2016 for felony counts of receiving stolen property and drug possession. She was conveyed to the hearing and participated in the hearing. Following the hearing, the trial court issued an order granting SCOJFS's motion and awarding it permanent custody of H.W. The trial court found that the child had been in SCOJFS's temporary custody for at least twelve out of the past twenty-two months. The trial court also determined that awarding SCOJFS permanent custody of H.W. would serve the child's best interest.

{¶6}   This appeal followed.

## II. Assignment of Error

{¶7}   C.P. raises one assignment of error.

THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY
WAS IN THE BEST INTEREST OF THE MINOR CHILD.

**III. Law and Analysis**

{¶8}    In her sole assignment of error, C.P. contends that the trial court erred by determining that awarding SCOJFS permanent custody was in the child's best interest. C.P. does not dispute that H.W. had been in SCOJFS's custody for at least twelve of the past twenty-two months. Instead, C.P. argues that "the evidence showed that [she] had made significant improvements since SCOJFS filed its initial complaint" and that she should have been given "more time to complete her case plan." Specifically, she claims that while her "efforts were not always perfect", she had "attended parenting classes, started a drug treatment program, and attempted to stay in contact with SCOJFS throughout the proceedings."

**A.  Standard of Review**

{¶9}    A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re R.M.,* 2013–Ohio–3588, 997 N.E.2d 169, ¶ 53 (4th Dist.).

> " 'Weight of the evidence concerns "the inclination of the greater amount of
> credible evidence, offered in a trial, to support one side of the issue rather than the
> other. It indicates clearly to the jury that the party having the burden of proof will
> be entitled to their verdict, if, on weighing the evidence in their minds, they shall
> find the greater amount of credible evidence sustains the issue which is to be
> established before them. Weight is not a question of mathematics, but depends on
> its effect in inducing belief." ' "

*Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶10} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley* at ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord In re Pittman,* 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶ 23–24.

{¶11} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is: "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). "Thus, if the

children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.* at ¶ 55.

{¶12} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin* at 175. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.,* quoting *Martin* at 175; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶13} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. As the *Eastley* court explained:

> "[I]n determining whether the judgment below is manifestly against the weight of
> the evidence, every reasonable intendment and every reasonable presumption
> must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is
> bound to give it that interpretation which is consistent with the verdict and
> judgment, most favorable to sustaining the verdict and judgment."

*Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

## B. Permanent Custody Principles

{¶14}  A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *In re D.A.* at ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974). Thus, the State may terminate parental rights when a child's best interest demands such termination. *In re D.A.* at ¶ 11.

{¶15}  Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. *Id.* Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151, as set forth in R.C. 2151.01:

> (A) To provide for the care, protection, and mental and physical development of children * * * whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety;

(B) To provide judicial procedures through which Chapters 2151. and 2152. of the Revised Code are executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced.

### C. Permanent Custody Framework

{¶16} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶17} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶18} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶19}   In the case at bar, C.P. does not challenge the trial court's R.C. 2151.414(B)(1) finding. Therefore, we do not address it. Instead, C.P. focuses her argument on the trial court's best interest determination.

### D. Best Interest

{¶20}   Here, C.P. does not expressly challenge any of the best interest factors listed above; however, her argument could be interpreted as a challenge to the trial court's finding regarding the child's need for a legally secure permanent placement and whether that type of placement can be achieved without granting permanent custody to SCOJFS. C.P. contends that the evidence shows that she has made "significant improvements" since the dependency complaint was filed in this case and that she could eventually provide a legally secure permanent placement for the child. C.P. thus contends that the trial court should have denied the permanent custody motion and given her more time to complete her case plan.

{¶21}   We do not agree with C.P. that she has made "significant improvements" during the pendency of the case or that the trial court should have given her more time to complete the case plan. Rather, the evidence adduced at the permanent custody hearing clearly demonstrates that C.P. has failed to make improvements or work towards the completion of her case plan. For instance, the evidence shows that during the pendency of this case C.P. has been incarcerated six times for various offenses. C.P. was convicted of felony counts of receiving stolen property and drug possession, resulting in a two-year prison sentence in May 2016. C.P. failed to inform her caseworker of her whereabouts and failed to maintain regular contact with SCOJFS. She failed to maintain appropriate and stable housing, having a house foreclosed on despite monetary assistance from the agency, having been evicted from an apartment, and having failed to follow through with the agency's referral to Metropolitan Housing. C.P. also failed to complete

parenting classes through Elizabeth's Hope, and failed to complete alcohol and drug counseling through Prism Behavioral Health Care and Recovery Council, having been terminated from both programs for noncompliance. C.P. also tested positive for drugs, refused to take drug screens, and had invalid drug screens during the pendency of the case. Finally, the evidence indicates that C.P. only visited H.W. sporadically, with the last visit being on June 18, 2015.

{¶22} In addition to the above evidence, the caseworker from SCOJFS testified that they investigated several relative placement options for the child but that no suitable options were available. Moreover, the attorney and guardian ad litem for the child agreed, through two reports filed with the trial court, that it was in the child's best interest for SCOJFS to be awarded permanent custody.

{¶23} The foster mother also testified at the hearing, indicating that the child has thrived under her care, and that she is willing to adopt the child. The foster mother also expressed concern that C.P. showed up to at least one scheduled visitation under the influence; and that she regularly missed or showed up late to scheduled visitations with H.W.

{¶24} Here, SCOJFS presented competent and credible evidence at the permanent custody hearing indicating that C.P. failed to complete her case plan or to otherwise work towards reunification with H.W. While C.P. contends that given more time she could complete her case plan, her past behaviors indicate otherwise. Moreover, we have continuously recognized that a trial court is not required to experiment with a child's welfare in order to permit a parent an opportunity to prove his or her suitability:

> " ' * * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial

determination. The child's present condition and environment is the subject for

decision not the expected or anticipated behavior of unsuitability or unfitness of

the * * * [parent]. * * * The law does not require the court to experiment with the

child's welfare to see if he will suffer great detriment or harm.' "

*In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 42, quoting *In re Bishop*, 36 Ohio

App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987); *see also In re C.B.C.*, 4th Dist. Lawrence Nos.

15CA18 & 15CA19, 2016-Ohio-916, ¶ 61. Thus, we disagree with the suggestion that the trial

court should have given C.P. one more chance to prove her suitability.

{¶25} We therefore conclude that clear and convincing evidence supports the trial

court's determination that awarding SCOJFS permanent custody is in H.W.'s best interest. H.W.

needs a legally secure permanent placement. While C.P. says she would like to provide it, her

past behaviors suggest an inability to do so. Furthermore, the record does not indicate any other

viable options for a legally secure permanent placement.

## IV. Conclusion

{¶26} Accordingly, based upon the foregoing reasons, we overrule C.P.'s sole

assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

By:_____
Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.