[Cite as *In re J.H.*, 2025-Ohio-811.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# ASHTABULA COUNTY

IN THE MATTER OF:

J.H., JR., J.H., D.H., D.H., AND A.H.,
DEPENDENT CHILDREN

CASE NOS. 2024-A-0087
2024-A-0088
2024-A-0089
2024-A-0090
2024-A-0091

Civil Appeals from the
Court of Common Pleas,
Juvenile Division

Trial Court Nos. 2021 JC 00059
2021 JC 00060
2021 JC 00061
2021 JC 00062
2021 JC 00063

**O P I N I O N**

Decided: March 10, 2025
Judgment: Affirmed

*Matthew S. Ziccarelli*, Ziccarelli Law, 8754 Mentor Avenue, Mentor, OH 44060 (For
Appellant, Jaiontai M. Henton).

*April R. Grabman*, Ashtabula County Prosecutor, and *Mary M. Stanford*, Assistant
Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee, Ashtabula
County Children Services Board).

*Tabitha L. Stewart*, P.O. Box 185, Rock Creek, OH 44084 (Guardian Ad Litem).

MATT LYNCH, J.

{¶1} Appellant, Jaiontai M. Henton, appeals the granting of appellee, Ashtabula

County Children Services Board's, Motion to Modify Temporary Custody to Permanent

Custody, with respect to the minor children, J.H., Jr., J.H., D.H., D.H., and A.H. For the

following reasons, we affirm the decision of the Ashtabula County Court of Common Pleas, Juvenile Division.

{¶2} On July 8, 2021, Ashtabula Children Services filed a Verified Complaint for Protective Supervision alleging that the children were dependent pursuant to R.C. 2151.04(C). The juvenile court granted Ashtabula Children Services protective supervision and ordered a no contact order between the children and Henton. Following adjudication, the children were found to be dependent.

{¶3} On July 27, 2021, Henton was arrested for the rape of the children's half-siblings.

{¶4} On October 21, 2021, the juvenile court ordered the children to remain in their mother's custody under the protective supervision of Ashtabula Children Services.

{¶5} On March 22, 2022, Henton and the children's mother were charged with intimidation of a witness.

{¶6} On March 23, 2022, Ashtabula Children Services filed a Verified Complaint for Emergency Temporary Custody alleging that the children were dependent pursuant to R.C. 2151.04(B) and (C), which the juvenile court accepted as a Post-Dispositional Motion to Modify Protective Supervision to Temporary Custody. The juvenile court granted Ashtabula Children Services temporary custody of the children.

{¶7} Henton pled guilty on May 9, 2022, and was sentenced to fifteen to eighteen and one-half years in prison. The mother pled guilty on June 6, 2022, and was sentenced to thirty-six months in prison.

{¶8} On June 20, 2023, Ashtabula Children Services filed its Motion to Modify Temporary Custody to Permanent Custody.

Case Nos. 2024-A-0087, 2024-A-0088, 2024-A-0089, 2024-A-0090, 2024-A-0091

{¶9} On June 28, 2024, a permanent custody hearing was held. Henton was present at the hearing but did not present evidence.

{¶10} On October 2, 2024, the juvenile court granted Ashtabula Children Services permanent custody of the children.

{¶11} In its permanent custody motion, Ashtabula Children Services alleged that the children had been in temporary custody for twelve or more months of a consecutive twenty-two month period pursuant to R.C. 2151.413(D)(1) and, alternatively, that the children could not be placed with either parent for a reasonable time or that the children should not be placed with either parent pursuant to R.C. 2151.413(A). The juvenile court found both claims to be valid.

{¶12} With respect to the best interest of the children pursuant to R.C. 2151.414(D)(1), the juvenile court made the following findings: The children have been residing in a foster home since their removal on May 3, 2022. The children's caseworker and guardian ad litem have observed them in their placement and testified that they are closely bonded with their foster mother. The children are in need of a legally secure placement, and this cannot be achieved without a grant of permanent custody to Ashtabula Children Services. The parents have been convicted of crimes against the children and/or their siblings and were incarcerated at the time Ashtabula Children Services moved for permanent custody. The guardian ad litem recommended granting permanent custody to Ashtabula Children Services. Reasonable efforts were made throughout the history of the case to prevent the removal of the children from their home.

{¶13} On October 30, 2024, Henton filed a Notice of Appeal. On appeal he raises the following assignments of error:

3

[1.] The trial court committed plain error by failing to conduct any inquiry under the Indian Child Welfare Act as required by 25 U.S.C. 1911 and 25 C.F.R. § 23.107.

[2.] The trial court erred when it committed permanent custody to Ashtabula County Children Services Board and terminated appellant's parental rights without identifying all possible paternal relatives.

{¶14} Under the first assignment of error, Henton argues the juvenile court failed to comply with federal regulation requiring it to conduct an inquiry into whether the children were Native American.

{¶15} Federal regulations pursuant to the Indian Child Welfare Act provide:

State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.

25 C.F.R. 23.107(a); 25 U.S.C. 1911(b) ("[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe"); *see also* Ohio Adm.Code 5101:2-53-02(A) ("[f]ailure to identify Indian children can nullify court proceedings that have not been conducted in accordance with ICWA").

{¶16} Contrary to Henton's assignment of error, the juvenile court did not fail to comply with the provisions of the Indian Child Welfare Act. The juvenile court's March 24, 2022 Judgment Entry, issued after the shelter care hearing on Ashtabula Children Services' Verified Complaint for Emergency Temporary Custody (following the mother's arrest), states: "The parties have determined that ICWA is not applicable to the minor

4

children. … **IT IS FURTHER ORDERED,** all parties are under an ongoing obligation to update the Court with knowledge or information regarding the ICWA status of the minor children." Present at this hearing were representatives of Ashtabula Children Services, the guardian ad litem, Henton (via video from the Ashtabula County Jail), counsel for Henton, the mother (via video from the Ashtabula County Jail), and counsel for the mother. At no point in these proceedings has any party suggested that the children may be "Indian" children for the purposes of the Act.

{¶17} The authorities cited by Henton in support of his argument simply do not apply in the present circumstances. In *In re L.M.*, 2024-Ohio-5549 (12th Dist.), the court of appeals found plain error and reversed a grant of permanent custody "[b]ecause there is no indication in the record that the juvenile court even attempted to make the necessary ICWA inquiry, and because there is no indication that Mother was ever put on notice of the potential for ICWA to apply." *Id.* at ¶ 21. Similarly, in *In re A.G.*, 2024-Ohio-2136 (10th Dist.), the court of appeals reversed and remanded the decision upon finding that the juvenile court did not comply with the regulations: "[o]ther than the magistrate's sole question directed at [the mother] at the temporary custody hearing, there is no indication in the record that the juvenile court made any inquiry of any participant in any proceeding that 25 C.F.R. 107 requires." *Id.* at ¶ 47. The *A.G.* decision does not support Henton's claim that "the inquiry must be made at any proceeding defined in 25 C.F.R. § 23.107(a), which would be any emergency, voluntary, or involuntary custody proceeding." Trial Brief of Appellant at 8. Such an interpretation is, moreover, contrary to the plain language of the regulation, which mandates that the inquiry occur "at the commencement of the proceeding" coupled with an instruction for "the parties to inform the court if they

5

subsequently receive information that provides reason to know the child is an Indian child." This is precisely what the juvenile court did in the present case. Finally, we note that federal regulations define a "child-custody proceeding" as an "action … that may culminate in … [f]oster-care placement, … [t]ermination of parental rights, … [p]readoptive placement, … [or] [a]doptive placement." 25 C.F.R. 23.2. The foregoing definition does not suggest that the inquiry must be or should be made at the commencement of each discrete stage of the proceeding or action, but at the commencement of a proceeding understood broadly as the process that could ultimately "culminate" in a child's placement outside the home.

{¶18} The first assignment of error is without merit.

{¶19} In the second assignment of error, Henton argues that the juvenile court incorrectly granted permanent custody to Ashtabula Children Services without first identifying all possible paternal relatives who may have been interested in obtaining custody of the children. Because there were paternal relatives who were not investigated for potential placement, Henton contends that the court could not find it in the children's best interest to grant permanent custody to Ashtabula Children Services. We disagree.

{¶20} In Ohio, permanent-custody motions are governed by R.C. 2151.414. It is well-established that "the [permanent custody] statute does not require a juvenile court to consider relative placement before granting the motion for permanent custody." *In re A.C.H.*, 2011-Ohio-5595, ¶ 44 (4th Dist.); *In re S.S.*, 2023-Ohio-1663, ¶ 35 (6th Dist.) ("in satisfying its duty to determine whether permanent custody to the agency is in a child's best interest, the juvenile court was not required to determine whether maternal great-grandmother or any other relative was available for placement"). "As the Ohio Supreme

6

Court has explained, while courts must conduct a thorough statutory analysis weighing multiple factors to determine a child's best interest, they are not required to find that termination is the 'only option' or that no suitable relative placement exists." *In re C.J.F.-O.*, 2024-Ohio-6056, ¶ 31 (12th Dist.), citing *In re Shaefer*, 2006-Ohio-5513, ¶ 64.  Or as this Court has stated: "While a children services agency should strive to place a child with a willing and suitable relative, … we will not impose a duty on the agency to search for and examine every possible relative, especially those that have never indicated a desire to be considered as a placement option."  *In re Brown*, 2004-Ohio-3337, ¶ 14.

{¶21}  The second assignment of error is without merit.

{¶22}  For the foregoing reasons, the decision of the Ashtabula County Court of Common Pleas, Juvenile Division, to grant Ashtabula Children Services' Motion to Modify Temporary Custody to Permanent Custody is affirmed.


JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.