[Cite as *In re J.P.B.*, 2013-Ohio-787.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 12CA34 |
| J.P.B. | : | |
| Adjudicated Dependent Child. | : | DECISION AND JUDGMENT ENTRY |
| | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     Paul Giorgianni, 1538 Arlington Avenue, Columbus, Ohio
43212-2710

COUNSEL FOR APPELLEE:     James E. Schneider, Washington County Prosecuting
Attorney, and Kevin A. Rings, Washington County Assistant
Prosecuting Attorney, 205 Putnam Street, Marietta, Ohio
45750

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-1-13
ABELE, J.

{¶ 1}   This is an appeal from a Washington County Common Pleas Court, Juvenile

Division, judgment that awarded Washington County Children Services (WCCS), appellee herein,

permanent custody of J.P.B. (born October 3, 2006).

{¶ 2}   L.C.,[1] the child's natural father and appellant herein, assigns the following error for

review:

_____

[1] Counsel states that the father's first initial is "E."     The trial court record and the notice of appeal that appellant filed pro se, however, indicate that his first initial is "L."     We have used what appears to be the proper initial.

"APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 3}   On September 3, 2009, the child entered WCCS's temporary custody by ex parte emergency order after WCCS became concerned that the child had suffered sexual abuse and that the mother was mentally unstable.   At the time, appellant had not been involved in the child's life.

{¶ 4}   On September 4, 2009, WCCS filed a complaint that alleged the child is a neglected, dependent, and abused and requested temporary custody.   The trial court subsequently continued its temporary custody order pending further disposition.

{¶ 5}   On November 16, 2009, the trial court adjudicated the child dependent, dismissed the remaining allegations, and awarded WCCS temporary custody of the child.

{¶ 6}   On February 23, 2011, WCCS filed a request for permanent custody.   The guardian ad litem's report recommended that the court award WCCS permanent custody.   The guardian ad litem filed another report just prior to the permanent custody hearing and again recommended that the court award WCCS permanent custody.   The guardian ad litem observed that appellant has not visited the child on a consistent basis and did not express any interest in the child until WCCS instituted the proceeding.   The guardian ad litem further noted that appellant has a "lengthy criminal record" and a "history of drug use."

{¶ 7}   On March 22, 2012, the trial court held a permanent custody hearing.   WCCS caseworker Amanda Herron testified that since the child's removal, she has lived in two different foster homes.   Also, the child has been in counseling since shortly after her removal due to exhibiting "sexually reactive behaviors."   As of March 2012, the child had "shown a tremendous progress" and her counseling "is on an as needed basis."

{¶ 8}    Herron explained that when the child first entered WCCS's care, "she was overweight" and "only ate junk food, candy."   Since the child has been in WCCS's custody she is "healthy" and does not have any "weight issues."   Herron stated that the child is current "on her shots," she no longer "cuss[es] like a sailor," and she follows directions.   Herron testified that the child is on target developmentally and "seems very stable most of the time."   Herron explained that the child "has a strong attachment to her mother," but the mother is "not in a permanent placement" and the child "desperately needs that."

{¶ 9}    Herron testified that when WCCS removed the child from her mother's care, WCCS had little knowledge about appellant due to his lack of involvement in the child's life. WCCS knew that appellant "already had on his criminal record some exclusionary offenses that according to the Ohio Revised Code and the Ohio Administrative Code, are exclusionary to child placement."   Herron stated that WCCS discovered that appellant "is a multi-state offender.   He offended, weapon charges, domestic violence charges, drug charges, in several other states.   One of those resulted in a pretty lengthy prison sentence."

{¶ 10}  Herron stated that WCCS scheduled visits between the child and appellant and the child "had developed at this point a cursory relationship with him.   She's not fearful of him.   But she does not appear to have a significant attachment to him."   Herron explained that appellant did not consistently attend visitations.   She stated that appellant's overall attendance rate was "forty-eight percent, and he's missed a total of one hundred and fifteen visits with [the child]."   Herron further testified that when WCCS filed for permanent custody, appellant's visitation attendance did not increase but "[i]t has consistently gone down."   Herron testified that as of the date of the permanent custody hearing, appellant had not visited with the child since February 8,

2012. Herron explained that appellant attended visits ninety to one hundred percent of the time for a two- or three-month period. She stated that a ninety to one hundred percent attendance record is what WCCS would expect from a parent who is committed to a child placement.

{¶ 11} Herron explained that WCCS started a home study for appellant and his wife, but it was "well over a year" before WCCS completed the home study because appellant and his wife "failed repeatedly to complete their background checks." Herron stated: "In fact, we were lied to, I have lost count, and didn't document even how many times we were lied to about the fact that they had already completed the background checks, and the results weren't back yet."

{¶ 12} Herron testified that she gave appellant three drug tests over an approximately one-year period and appellant tested positive each time. Herron explained that the day before the permanent custody hearing, she went to appellant's home "after he had completed his probation and all of the requirements for his most recent criminal charges, and asked if he would like to take a drug test." Herron testified that appellant refused and admitted that he had smoked marijuana.

{¶ 13} Herron stated that appellant did not make progress to establish himself as a placement option: "He continued to have criminal activity throughout the case which was–there was a directive in the case plan that said refrain from criminal activity * * * and he has failed to do that."

{¶ 14} Herron further explained that appellant did not refrain from drugs and alcohol and that he did not attend drug and alcohol counseling. Herron stated that appellant informed her "that he had been discharged [from counseling], that he didn't need them. The report from the counselor was very different." Herron testified that appellant stopped attending counseling when she requested that appellant be given a drug test at counseling.

**{¶ 15}** Herron stated that appellant never completed mental health services and never attended the scheduled appointments. She explained that appellant "[w]ent for an initial psychiatric evaluation, was diagnosed with psychosis, which is pretty severe and kind of scary, especially when we're looking at child placement." Herron testified, however, that appellant "did not comply with the medication that was prescribed and never went back to counseling."

**{¶ 16}** Herron also stated that appellant failed to demonstrate any effort to comply with the case plan requirements. She explained: "There has not been any demonstration of effort. Even if he didn't agree that he needed these things, compliance with them would have provided evidence that he was at least willing to take direction, which parenting a child like [J.P.B.] would require." Herron testified that she would not feel comfortable allowing the child to have overnight visits in the home. Herron further stated that appellant's wife "has an extensive child abuse and neglect history" and that "[s]he was a care giver or a perpetrator in many, many substantiated cases of abuse and neglect including sexual abuse."

**{¶ 17}** L&P Services medical records coordinator Marsha Sellers testified that appellant had been scheduled for eight counseling sessions, but only attended three. Sellers stated that according to the discharge summary, "the client did not return" after his last attendance on February 7, 2011.

**{¶ 18}** WCCS professional clinical counselor Lee Ann Bates testified that she counseled the child. Bates stated that when she first met the child, the child exhibited thirty-eight different sexual behaviors. Bates explained "it was clinically significant that for a child that age to have that highly developed sexual behaviors, that sexual abuse was imminent; it was current; very recent; and it was very severe."

{¶ 19} Marietta Municipal Court Probation Officer Eric Brockmeier testified that he had been appellant's probation officer. He stated that since 2009, appellant has been convicted of five offenses in municipal court. Brockmeier later clarified, after looking at his records, that appellant had three convictions and that two charges had been dismissed.

{¶ 20} On July 23, 2012, the trial court awarded WCCS permanent custody of the child. The court found that appellant had no involvement with the child until WCCS filed the abuse, neglect, and dependency complaint. The court observed that WCCS did not approve appellant for placement because he "is a multi-state criminal offender. He has a record for weapons, domestic violence and drugs. He has served substantial time in prison." The court also found that appellant "has had inconsistent visits with the child" and that although he "now has established a relationship with his daughter[,] he has no significant attachment to the child. As of March 20, 2012, the father only attended 48% of his visits over 2 ½ years (30 months). Even, [sic] after the filing of permanent custody, the father's visits did not improve." The court determined that appellant "is not a valid placement option. The father still is engaging in criminal activity and spent time in jail in 2012. He has not refrained from drug and alcohol use. He had a positive drug test during the case and did not complete a psychological evaluation and required counseling." The court further noted that appellant's "wife has an extensive history with Children Services Board involving her children. She has had children removed from her care in the past."

{¶ 21} The trial court found that when WCCS filed its permanent custody motion, the child had been in WCCS's temporary custody "for 17 actual months (15 under the statutory period). Between the filing, [sic] and the date of the hearing[,] the child has continued in the temporary custody of the Agency for another 13 months, totaling 28 months as of the date of the permanency

hearing." The court found that "[n]one of the services provided to the parents have enabled either to assume the role of custodian after 30 months. The child needs stability and permanency. Neither parent can provide this." The court thus awarded WCCS permanent custody of the child. This appeal followed.

{¶ 22} In his sole assignment of error, appellant argues that he did not receive the effective assistance of counsel. He contends that counsel was ineffective for failing to object to the following instances of hearsay testimony: (1) WCCS caseworker Herron testified that "[t]he report from [appellant's drug and alcohol abuse counselor] was very different" from appellant's testimony that he had been discharged from the counseling; (2) Herron stated that appellant "was diagnosed with psychosis, which is pretty severe and kind of scary, especially when we're looking at child placement"; (3) counsel's cross-examination of Herron elicited hearsay testimony and she stated that appellant's wife "has an extensive child abuse and neglect history" and "was a care giver or perpetrator in many, many substantiated cases of abuse and neglect including sexual abuse"; (4) Marietta Municipal Court Probation Officer Erick Brockmeier testified based upon documents that he reviewed that he "believe[d]" appellant had been convicted five times in municipal court since 2009, but after consulting his notes, he clarified that appellant had three convictions and two charges had been dismissed; and (5) Brockmeier testified about the contents of an unspecified "criminal history report."

{¶ 23} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. In re Wingo, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist. 2001), citing In re Heston, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist. 1998). "'Where the proceeding contemplates the loss of

parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.'"   Id., quoting Heston.

{¶ 24}  To reverse a trial court's judgment based upon a claim of ineffective assistance, a defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.   Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Noling, 98 Ohio St.3d 44, 65, 781 N.E.2d 88 (2002); State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Both prongs of this test need not be analyzed, however, if a claim can be resolved under one prong.  State v. Madrigal, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); State v. Loza, 71 Ohio St.3d 61, 83, 641 N.E.2d 1082 (1994).

{¶ 25}  Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; Bradley, paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); State v. Peeples, 94 Ohio App.3d 34, 44, 640 N.E.2d 208 (1994) (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process").   To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."   Bradley, paragraph two of the syllabus; Strickland, 466 U.S. at 687; Noling; Bradley, paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that,

were it not for counsel's errors, the result of the trial would have been different.").   When an

appellate court considers an ineffective assistance of counsel claim, the court "'will not presume

prejudice but will require an affirmative showing thereof.'"   In re Z.S., 4th Dist. No. 10CA16,

2010–Ohio–5038, ¶35, quoting Matter of Shelton, 4th Dist. No. 818 (Mar. 16, 1993).

{¶ 26}  In the case at bar, even if we assume for the sake of argument that trial counsel

performed deficiently by failing to object to the alleged hearsay testimony, appellant has failed to

establish that any such deficiency prejudiced his case.   Even if counsel had objected to each

instance of the alleged hearsay testimony, and even if the trial court had sustained them, as we

explain below, the transcript from the permanent custody hearing contains ample clear and

convincing evidence that the custody award to WCCS is in the child's best interests.

A

STANDARD OF REVIEW

{¶ 27}  Generally, an appellate court will not reverse a trial court's permanent custody

decision if some competent and credible evidence supports the judgment.   In re Perry, 4th Dist.

Nos. 06CA648 and 06CA649, 2006–Ohio–6128, ¶40, citing State v. Schiebel, 55 Ohio St.3d 71,

74, 564 N.E.2d 54 (1990).   Thus, our review of a trial court's permanent custody decision is

deferential.   In re Hilyard, 4th Dist. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604,

05CA606, 05CA607, 05CA608, 05CA609, ¶17, 2006–Ohio–1965.   Moreover, "an appellate court

should not substitute its judgment for that of the trial court when there exists competent and

credible evidence supporting the findings of fact and conclusion of law."   Schiebel, 55 Ohio St.3d

at 74.   Issues relating to the credibility of witnesses and the weight to be given the evidence are

primarily for the trier of fact.   As the court explained in Seasons Coal Co. v. Cleveland, 10 Ohio

St.3d 77, 80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."   Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)."   Davis v. Flickinger, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).   Accord In re Christian, 4th Dist. No. 04CA10, 2004–Ohio–3146, ¶7.

B

STANDARD FOR GRANTING PERMANENT CUSTODY

{¶ 28}  A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment.   "Clear and convincing evidence" means:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.   It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.   It does not mean clear and unequivocal."

In re Estate of Haynes, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986).   Accord Schiebel, 55 Ohio St.3d at 74.   In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."   Schiebel, 55 Ohio St.3d at 74.

C

PERMANENT CUSTODY PRINCIPLES

**{¶ 29}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.   Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re Murray, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990).   Accord In re D.A., 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829, ¶9.   A parent's rights, however, are not absolute.   D.A. at ¶11.   Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'"   In re Cunningham, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting In re R.J.C., 300 So.2d 54, 58 (Fla.App.1974).   Thus, the state may terminate parental rights when a child's best interest demands such termination. D.A. at ¶11.

**{¶ 30}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.   The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.   R.C. 2151.414(A)(1).   Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151.01:

> (A) To provide for the care, protection, and mental and physical development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.

D

PERMANENT CUSTODY FRAMEWORK

**{¶ 31}** R.C. 2151.414(B) allows a trial court to award a children services agency permanent custody of a child if clear and convincing evidence demonstrates that granting permanent custody would serve the child's best interests and that at least one of the following factors exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive   twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.
> For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

**{¶ 32}** Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.

**{¶ 33}** We further observe that the statute requires the trial court to find the existence of only one of the R.C. 2151.414(B)(1) factors.   In re W.W., 1st Dist. Nos. C–110363 and C–110402,

2011–Ohio–4912, ¶54 (observing that if one of R.C. 2151.414(B)(1) factors exists, court need not find that other (B)(1) factors apply). If the court finds that R.C. 2151.414(B)(1)(d) applies, then it need not also find that (1) the child cannot or should not be placed with either parent within a reasonable time, (2) the child is abandoned, or (3) the child is orphaned. Consequently, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interests. E.g., In re T.F., 4th Dist. No. 07CA34, 2008–Ohio–1238, ¶23; In re Williams, 10th Dist. No. 02AP–924, 2002–Ohio–7205, ¶47; In re Dyal, 4th Dist. No. 01CA11 (Aug. 9, 2001).

E

BEST INTERESTS

**{¶ 34}** R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2]

---

[2] R.C. 2151.414(E)(7) to (11) provide as follows:

(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an

{¶ 35} In the case at bar, we do not believe that the trial court would have reached a different decision if trial counsel had objected to the alleged hearsay testimony.   Even without the alleged hearsay, the trial court's judgment to award appellee permanent custody is not against the manifest weight of the evidence.   Clear and convincing evidence supports the trial court's finding

---

existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of   the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child. that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense[.]

under R.C. 2151.414(B)(1)(d) that the child has been in appellee's custody for twelve or more months of a consecutive twenty-two month period.   The court adjudicated the child dependent on November 16, 2009.   The court awarded appellee temporary custody on September 3, 2009. Thus, for purposes of R.C. 2151.414(B)(1)(d), the child entered appellee's temporary custody on the date that is sixty days following the child's removal, which would be November 3, 2009. When appellee filed its February 23, 2011 permanent custody motion, the child had been in its custody for over fifteen months.

{¶ 36}  Moreover, clear and convincing evidence supports the trial court's finding that awarding appellee permanent custody will serve the child's best interest.   Regarding the first factor, the child's interactions and interrelationships, the evidence shows that the child established a relationship with appellant in 2009, after WCCS became involved.   Prior to that time, appellant had no significant contact with the child.   During the time that the child has been in WCCS's temporary custody, appellant has exercised visitation–albeit inconsistently–with the child and has developed an apparently superficial relationship with her.   While no one reported any inappropriate behavior between appellant and the child, the WCCS caseworker did not observe the child display any significant attachment to appellant.   Moreover, the evidence shows that appellant lacked a consistent commitment to his child.   WCCS caseworker Herron stated that appellant attended only forty-eight percent of the scheduled visits and that she would expect closer to a ninety percent compliance rate if a parent sincerely desired to establish or re-establish a bond with a child.

{¶ 37}  With respect to the second factor, the child's wishes, the guardian ad litem recommended that the court award appellee permanent custody.

{¶ 38} Regarding the third factor, the child's custodial history, the evidence shows that the child lived with her mother until the child was approximately three years old, at which point she entered WCCS's temporary custody. She has since remained in WCCS's temporary custody and is now over six years old. Thus, she has been out of her mother's care for over one-half of her life. Appellant never had custody of the child.

{¶ 39} With respect to the fourth factor, the child's need for a legally secure permanent placement, the testimony from the permanent custody hearing demonstrates that the child's mother has been unable to provide a legally secure permanent home for the child. Appellee presented evidence that appellant was unable to demonstrate a consistent ability to comply with the case plan so as to ensure that he could provide his daughter with a safe, stable, and permanent home in which she could thrive and in which she would be able to receive appropriate care to enable her to address her prior sexual abuse and her sometimes inappropriate sexual behaviors. The child has been in limbo for over three years now and the testimony shows that the child displays inappropriate sexual behaviors when stressed. Nothing could be more stressful for a young child than to be in a constant state of insecurity as to where her next home will be. This child definitely needs stability in order to allow her to heal from her prior sexual abuse and to receive adequate care and counseling as she ages so that she has a chance at a normal life free from inappropriate sexual behaviors. The child's counselor stated that the child is a special needs child, in a sense, due to her prior sexual abuse and she has fears of regression if the child is not afforded a stable, safe, and permanent home.

{¶ 40} While appellant may believe that he is able to provide a stable and permanent home for his child, he was released from jail only days before the permanent custody hearing. It is

difficult to imagine how appellant could provide the child a stable and permanent home under these circumstances.

{¶ 41} Furthermore, appellant has demonstrated that he is unable to refrain from using marijuana, despite WCCS's request that he do so if he sincerely wished to have custody of the child. Appellant even admitted that he had used marijuana the day before the permanent custody hearing. Appellant's conduct suggests that he places a higher value on recreational illegal drug use than the custody of his child. A parent who truly desires custody of his or her child would, we believe, make every effort to comply with a children services agency's request to refrain from illegal drug use. We find it impossible to believe that a parent who truly desires custody of his or her child would continue to abuse marijuana in the face of warnings that such abuse could lead to the termination of his or her parental rights. If appellant had a serious desire to obtain custody of his child, then one would have expected him to comply with all case plan requirements.

{¶ 42} As we have recognized time and again, a trial court is not required to experiment with a child's welfare in order to permit a parent to prove his or her suitability:

> """* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."""

In re A.C.H., 4th Dist. No. 11CA2, 2011-Ohio-5595, ¶42, quoting In re Bishop, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (1987), quoting In re East, 32 Ohio Misc. 65, 69, 288 N.E.2d 343 (1972). Appellant had over two years to demonstrate to WCCS that he could provide a stable and

permanent home and would be a suitable parent for the child.   During that two-year period, he

repeatedly used marijuana and missed visitations with the child.   He failed to timely fulfill

WCCS's request for a background check and outright lied to the caseworker.   In sum, appellant

failed to show that he could dedicate himself to the child's best interests.   We cannot fault the trial

court for deciding not to experiment with this fragile child in order to provide appellant an

opportunity to prove his ability to give her proper care, stability, support, and permanency.

{¶ 43}  Thus, because appellant could not or would not complete the case plan

requirements, appellant is unable to provide the child with a legally secure permanent placement.

The evidence also shows that neither the child's mother nor any suitable relative can provide a

legally secure permanent placement.   Consequently, awarding WCCS permanent custody will

satisfy the child's need for a legally secure permanent placement.

{¶ 44}  The foregoing evidence does not rest upon the alleged hearsay testimony of which

appellant complains.   The trial court made no mention of appellant's apparent psychosis.   To the

extent that the court improperly cited appellant's current wife's prior experience with children

services in its decision, we cannot state that the trial court would have reached a different decision

if it had ignored appellant's wife's prior experience.

{¶ 45}  Additionally, we observe that at least some of the evidence of which appellant

complains is cumulative to other evidence.   For example, appellant complains that the probation

officer testified regarding his prior misdemeanor convictions.   WCCS caseworker Herron,

however, also relayed that appellant had an extensive criminal history that spanned multiple states.

 Appellant also complains that Herron testified about his discharge from alcohol and drug abuse

counseling and that appellant's story was "very different" from his counselor's.   Other evidence

amply shows, however, that appellant did not complete drug and alcohol abuse counseling. His counselor testified that he did not attend all sessions and was discharged from the program due to his failure to attend.

{¶ 46} Thus, even without the alleged hearsay, more than ample competent and credible supports the trial court's decision to award WCCS permanent custody. Consequently, appellant cannot establish that any alleged deficiency in counsel's failure to object to hearsay affected the outcome of the proceedings.

{¶ 47} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Harsha, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## <u>NOTICE TO COUNSEL</u>

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.