[Cite as *In re B.E.*, 2014-Ohio-3178.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

IN THE MATTER OF:

|  |  |  |
|---|---|---|
| B.E., | : | Case No. 13CA26 |
|  | : |  |
| Adjudicated Abused/ Neglected/ | : |  |
| Dependent Child. | : | <u>DECISION AND JUDGMENT</u> |
|  | : | <u>ENTRY</u> |
|  | : |  |
|  | : | RELEASED 07/14/2014 |

<u>APPEARANCES</u>:

Susan M. Zurface Daniels, Peterson Law Offices, Wilmington, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.

Hoover, J.

{¶ 1} Appellant, Beth Elkins, appeals the trial court's judgment that awarded appellee, Highland County Department of Job and Family Services (fka Highland County Children Services), permanent custody of her two-year-old child. Appellant first argues that the trial court erred by failing to appoint a guardian *ad litem* to protect appellant's interests during the juvenile court proceedings. Because appellant fails to show that the appointment of a guardian *ad litem* would have altered the outcome of the permanent custody proceedings, appellant cannot show that she suffered any prejudice due to the lack of a guardian *ad litem*. Thus, appellant's first assignment of error is without merit.

{¶ 2} Appellant next asserts that the trial court's finding that she abandoned the child is against the manifest weight of the evidence. Because the trial court found that the child had been in appellee's temporary custody for more than twelve out of the past twenty-two months, it did

not need to also find that appellant abandoned the child. Thus, any error associated with the court's abandonment finding did not affect the outcome of the proceedings, and we must disregard it. Consequently, appellant's second assignment is without merit. Accordingly, we overrule appellant's two assignments of error and affirm the judgment of the trial court.

I.  FACTS

{¶ 3} On March 16, 2012, when the child was barely two months old, the child's father took her to the hospital with a large bruise on her face. The father stated that he slapped the child because she would not stop crying. The court subsequently adjudicated the child dependent and placed the child in appellee's temporary custody. Appellee placed the child in a foster home, and the child has remained in that same home throughout the proceedings.

{¶ 4} On August 12, 2013, appellee filed a motion to modify the disposition to permanent custody. In it, appellee stated that appellant, who is developmentally disabled, has attended only twenty-four out of fifty-five available visits and that she has not had any contact with the child since June 1, 2013. Appellee alleged that appellant engaged in services with Help Me Grow during her visits with the child, but "[s]everal concerns were noted regarding [appellant]'s growth under direction of the providers."

{¶ 5} At the permanent custody hearing, caseworker Tonya Farley explained that appellant's case plan required her to (1) comply with the Board of Developmental Disabilities' recommendations so that appellant could become independent; (2) work with the Help Me Grow program to learn how to take care of the child; (3) obtain stable housing; and (4) be able to provide for the child's basic needs. Farley stated that appellant ceased contact with the "Help Me Grow" program on May 31, 2013 and did not resume contact until shortly before the permanent custody hearing.

{¶ 6} Farley explained that appellant moved to Columbus earlier in 2013 to live with her husband's aunt, Sharon Scouler,[1] who also is the payee of appellant's Supplemental Security Income. Farley stated that when appellant moved to Columbus, appellant experienced difficulties having a provider assigned to her. "They would make some progress in identifying a provider and be close to getting one signed on to be able to help her with services, and then she reported that she fired that particular provider, and has only recently signed a new provider on."

{¶ 7} Farley stated that appellant "has always made an effort to provide things for the child" and that appellant has provided items such as clothing, toys, and diaper wipes. Farley testified that appellant brought food for the child, but it was not "always appropriate." Farley further explained that even though appellant brought items for the child, it "wasn't gender appropriate; it wasn't age appropriate; or weather appropriate. Sometimes the toys that she provided [were] not age appropriate; and the food that she provided was expired."

{¶ 8} Farley stated that she attended the November 7, 2013 visit between appellant and the child and described it as "very difficult." Farley explained that the foster mother stayed for the first forty minutes of the visit and that when the foster mother left, the child started crying and tried to get out of the baby gate. Farley testified that the child "was screaming, and pretty much inconsolable for most of the visit." Farley stated that after approximately an hour and fifteen minutes, "[the child] had screamed and screamed herself to sleep, basically, and she slept for about a-half-an-hour." Farley explained that the child resumed screaming and crying during the last 15 minutes of the visit and that the foster mother had to help console the child. Farley stated that "[i]t was not an easy visit for anyone."

---

[1] Appellant's brief observes that the permanent custody hearing transcript refers to Sharon as Sharon Skaller or Sharon Scour, but that the correct spelling is Sharon Scouler. Due to the lack of consistency in the transcript, we will use the spelling as proposed in appellant's brief.

{¶ 9} Farley further testified that appellant "needed to be prompted to change [the child's] diaper; and then she needed some hands-on instruction and demonstration in changing her diaper, about how to clean her, and how to put the diaper under her and get it situated so that the diaper was on properly." Farley stated that during the visit, appellant mainly "sat on the floor" and "was not really very engaged with the baby at all [and] needed to be prompted to play with her." Farley explained that the child "was just not real receptive to interacting with [appellant]." Farley testified that when the visit ended, appellant leaned in to kiss the child, which caused the child to scream.

{¶ 10} Toya Alexander testified that she has been appellant's Franklin County MRDD/DODD provider since October 30, 2013. Alexander explained that she helps appellant Mondays through Saturdays, eight hours per day, with personal care and transportation. Alexander testified that appellant recently looked for a new place to live, but stated that appellant "would have to have supervision" and that she would need someone with her twenty-four hours per day, if she were to have the child in her care.

{¶ 11} Appellant testified and her attorney asked questions about Sharon Scouler. Appellant explained that Scouler controls the money appellant receives from Social Security. Appellant stated that she has to do what Scouler tells her to do. Appellant also stated that Scouler told her that if appellant visited the child in Highland County, appellant would be arrested. Appellant testified that Scouler would tell appellant what to tell her attorney when the attorney called her on the telephone. Appellant explained that she is considering a new apartment and would be supervised seven days per week. However, on cross-examination, appellant stated that Scouler will receive joint custody of the child with which she was pregnant

at the time of the permanent custody hearing and that appellant will continue to live with Scouler.

{¶ 12} During closing arguments, appellant's attorney argued that Scouler hindered appellant's progress on the case plan. Appellant's attorney requested the court to give appellant a little more time to work on the case plan and a chance to remove herself from Scouler's influence. The guardian *ad litem* echoed appellant's attorney's concerns regarding Scouler's influence: "I do very much believe that [appellant] has been under the influence of Mrs. [Scouler], and that's been very detrimental to [appellant]'s progress." The guardian *ad litem* continued: "However, * * * she was made aware that that was a problem; that she needed to leave Ms. [Scouler]'s home, or do something about that situation; and has not done that to this point." The guardian *ad litem* asserted that the child is "very, very bonded" with the foster family and believes it would be "very detrimental" to the child if she were returned to appellant.

{¶ 13} On November 12, 2013, the trial court granted appellee permanent custody of the child. The court determined that R.C. 2151.414(B)(1)(b) and (d) applied. The court found that appellant abandoned the child by failing to visit or maintain contact with the child between June 1, 2013 and November 6, 2013. The court observed that the child entered appellee's temporary custody on March 19, 2012 and was adjudicated dependent on April 24, 2012. The court thus found that the child has been in appellee's temporary custody for twelve or more months of a consecutive twenty-two month period.

The court next considered the best interest factors and explained:

> "The Court finds [the child] currently has a very poor relationship with her mother. During the November 7, 2013 visit the child did not want to be present with her mother and the mother made no effort to engage with [the child] choosing instead to entertain herself with a toy. The mother was unable to change a diaper without help. Out of a possible 73 visits * * * the mother attended only 25. * * * *

> [The child] has bonded with her foster family and calls her foster parents mom and dad.  Her interaction and interrelationship with the foster family is very positive.  Her foster parents are willing and hopeful to adopt [the child] which is not possible without granting the pending motion.  The Court finds [the child] is in need of a legally secure placement.
>                     * * * *
> The Court finds both parents have failed to substantially comply with their case plan objectives.  Neither parent has suitable housing for the child due to others that reside with them.  * * * * The mother needs constant care for herself and is unable to care for her child.
> The Court finds as this case nears the two year anniversary neither parent has shown an ability or desire to reunify with their daughter.  Last minute efforts by parents are not unusual but in this case not compelling enough to convince the Court allowing additional time to either parent to reunify would make any difference.  Adequate opportunity was afforded each parent to reunify and both chose not to exercise the same."

{¶ 14} The court thus terminated appellant's parental rights and awarded appellee permanent custody of the child.

## II.  ASSIGNMENTS OF ERROR

{¶ 15} Appellant raises two assignments of error.

First Assignment of Error:

> The trial court erred by failing to appoint a guardian *ad litem* for the mother in violation of Juv.R. 4(B) and [R.C.] 2151.281(C), which mandate appointment of a guardian *ad litem* for an adult who appears incompetent.

Second Assignment of Error:

> The trial court's finding that the mother abandoned B.E. as defined in [R.C.] 2151.011(C) was not supported by sufficient evidence because the mother is fully dependent upon care providers to assist in managing scheduling and transportation.

## III.

## ANALYSIS

## A.

## GUARDIAN *AD LITEM*

{¶ 16} In her first assignment of error, appellant argues that the trial court erred by failing to appoint a guardian *ad litem* to protect her interests. Appellant asserts that the record shows that she is incompetent, and thus, that Juv.R. 4(B) and R.C. 2151.281(C) required the trial court to appoint a guardian *ad litem*. Appellant admits that she did not request the court to appoint a guardian *ad litem* but contends that the court's failure to appoint a guardian *ad litem* prejudiced her. She argues that the error prejudiced her because if the court had appointed a guardian *ad litem*, the guardian *ad litem* would have discovered the actions that allegedly hindered appellant's progress with the case plan. Appellant essentially claims that if a guardian *ad litem* had brought certain information to the trial court's attention, the court would not have awarded appellee permanent custody, but instead, would have continued the child in appellee's temporary custody in order to allow appellant additional time to show that she could properly care for the child.

{¶ 17} Because appellant did not object, we may reverse the trial court's decision only if the failure to appoint a guardian *ad litem* constituted plain error. *E.g., Stores Realty Co. v. Cleveland,* 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975) ("Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal."); *In re Etter,* 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998) (explaining that an appellate court may recognize an error that an appellant waived only if it constitutes plain error). Courts should exercise extreme caution when invoking the plain error doctrine, especially in civil cases. Thus, "the doctrine is sharply limited to the "*extremely rare* case involving *exceptional* circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial

process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122–123, 679 N.E.2d 1099 (1997) (emphasis *sic*); accord *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶43. The case at bar is not one of those extremely rare cases involving exceptional circumstances so as to warrant application of the plain error doctrine.

{¶ 18} "R.C. 2151.281(C) and Juv.R. 4(B)(3) mandate that the court appoint a guardian *ad litem* to protect the interests of an incompetent adult in a juvenile court proceeding where the parent appears to be mentally incompetent."[2] *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985). It is simply the appearance of mental incompetence and not an actual finding of such that triggers the requirement of the appointment of a guardian *ad litem* under R.C. 2151.281(C) and Juv.R. 4(B)(3). *In re Amber G.,* 6th Dist. Lucas No. L-04-1091, 2004-Ohio-5665, ¶19, citing *In re Holmes*, 8th Dist. Cuyahoga No. 77785, 2001 WL 128007 (Feb. 15, 2001). However, failing to appoint a guardian *ad litem* when mandated under R.C. 2151.281(C) and Juv.R. 4(B)(3) does not constitute reversible error unless the failure affected the outcome of the proceedings. *Id.* at ¶17; *In re K.P.*, 8th Dist. Cuyahoga No. 82709, 2004-Ohio-1448, ¶24; *In re Anderson*, 4th Dist. Athens No. 02CA38, 2002-Ohio-7405, ¶9; *In re King-Bolen*, 9th Dist. Medina Nos. 3196-M, 3231-M, 3200-M, 3201-M, 2001 WL 1219471 (Oct. 10, 2001).

---

[2] R.C. 2151.281 provides in pertinent part:

> (C) In any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent.

Juv.R. 4(B)(3) contains a similar provision and states:

> (B) Guardian ad litem; when appointed.—The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
>     * * *

{¶ 19} "The role of guardian *ad litem* is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest." *Baby Girl Baxter* at 232. "The purpose of a guardian *ad litem* is to secure for the incompetent person a proper defense or an adequate protection of his or her rights. Further, a guardian *ad litem* is appointed to protect the ward's interest and acts for her benefit. A guardian *ad litem* is an officer of the court and must be distinguished from a general guardian who has the general care and control of the person." (Citations omitted.) *King-Bolen* at *11. While "[a] guardian *ad litem* is expected to provide an additional level of protection for an incompetent parent," a guardian *ad litem* does not have a duty "to prompt his or her ward to take advantage of available services." *In re Amber G.* at ¶25. Additionally, "[e]ven where a parent's attorney was appointed solely as counsel and not specifically for the dual purpose of serving as guardian *ad litem*, the parent does not suffer prejudice if counsel safeguards the parent's rights and advocates for reunification in accordance with the parent's wishes." *In re M.T.*, 6th Dist. Lucas No. L-09-1197, 2009-Ohio-6674, ¶17, citing *In the Matter of A.S.,* 6th Dist. Lucas No. L-09-1080, 2009-Ohio-5504, ¶28, citing *In re A.M.,* 4th Dist. Adams No. 08CA862, 2008-Ohio-4835, ¶ 24; *In re Amber G.* at ¶36. Moreover, a parent must affirmatively demonstrate that the failure to appoint a guardian *ad litem* affected the outcome of the proceedings. *In re Amber G.* at ¶38. An appellate court will not presume prejudice. *Id.*

{¶ 20} In the case at bar, even if appellant was entitled to a guardian *ad litem*, appellant cannot demonstrate that the failure to appoint a guardian *ad litem* affected the outcome of the proceedings. Appellant's counsel "safeguarded her rights and interests by actively participating in the court proceedings, drawing the court's attention to the positive aspects of appellant's life

_____

(3) The parent is under eighteen years of age or appears to be mentally incompetent.

as they relate to the statutory factors, and arguing against the termination of appellant's parental rights. Appellant has failed to demonstrate how a guardian *ad litem* would have acted differently or produced a different result." *In re M.T.* at ¶18; *In re Amber G.* at ¶36 (stating that "appellant's rights were safeguarded because the attorney did advocate for reunification and also attacked LCCS's failure to link appellant with MRDD services."). Appellant's counsel zealously represented appellant and advocated that the trial court deny appellee permanent custody. Thus, if a guardian *ad litem* believed that denying permanent custody was in appellant's best interests, then appellant's counsel fully advocated that position, and appellant did not suffer prejudice.

{¶ 21} Moreover, appellant's counsel brought to the court's attention the alleged subterfuge Scouler caused. Thus, appellant's counsel brought to the court's attention the facts appellant alleges a guardian *ad litem* would have discovered. As such, the trial court was well-aware of Scouler's alleged subterfuge. In fact, the trial court even noted its concerns that appellant may have unwittingly permitted Scouler to control appellant's life. Consequently, a guardian *ad litem*'s presentation of this same evidence would have been cumulative. Therefore, appellant did not suffer any prejudice due to the lack of a guardian *ad litem* who could have presented evidence regarding Scouler's alleged subterfuge. *See In re K.J.D.*, 10th Dist. Franklin Nos. 12AP-652 and 12AP-653, 2013-Ohio-610, ¶54 (explaining that guardian *ad litem*'s failure to present certain evidence is not prejudicial when another party introduces that same evidence).

{¶ 22} To the extent appellant asserts that a guardian *ad litem* may have brought Scouler's alleged subterfuge to the court's attention at a time when corrective action could have occurred, appellant has failed to show that continuing to comply with her case plan and visiting the child would have affected the outcome of the proceedings. Instead, the record shows that even before appellant stopped visiting the child and terminated her services with the Board of

DD, appellee intended to seek permanent custody of the child. The March 7, 2013 semiannual administrative review stated that appellee was concerned about placing the child "with either parent at this time due to their limited cognitive abilities and their instabilities." The review further noted that appellee was conducting a home study of the child's paternal grandmother and that if it were not approved, appellee would pursue permanent custody. The March 7, 2013 case review indicated that the parents

> "no longer have housing of their own. They have consistently had difficulties managing money which has caused problems with them being able to maintain a household. [The father] is reportedly living in a drug environment and has started using alcohol again. He does not have income sufficient to maintain a household of his own. [The mother] has sufficient income but does not have the ability to manage her funds appropriately. She frequently makes decisions for herself against the advice of people who are charged with assisting in her best interest."

The case review further noted that there were only two visits with the child in December and January, and none were completed in February. Thus, despite appellant's speculation that a guardian *ad litem* could have taken corrective action to stop the alleged subterfuge that purportedly caused appellant to miss visits with the child between June 1, 2013 and November 6, 2013, appellee's administrative review and case plan show that appellant did not attend all of her visits with the child even before June 1, 2013, when the alleged subterfuge supposedly began. The administrative review and case plan further indicate that appellee intended to pursue permanent custody before June 1, 2013. Consequently, had a guardian *ad litem* brought the alleged subterfuge to the trial court's attention at a time when corrective action may have been possible, appellant cannot show that earlier corrective action would have changed the outcome of the proceedings.

{¶ 23} Additionally, although appellant claims that a guardian *ad litem* would have ensured that appellant attended visitations and engaged in Help Me Grow services, she does not

show that her complete compliance with either would have changed the outcome of the proceedings. The trial court did not cite either factor as a major reason for awarding appellee permanent custody. Instead, the court noted that appellant did not have suitable housing for the child and "needs constant care for herself and is unable to care for her child." Moreover, it is not the duty of a guardian *ad litem* "to constantly prompt his or her client to take advantage of available services." *In re Anderson,* 4th Dist. Athens No. 02CA38, 2002–Ohio–7405, ¶13; *accord In re Amber G.* at ¶35.

{¶ 24} Furthermore, although appellant claims that the appointment of a guardian *ad litem* would have been beneficial in this case, a guardian *ad litem* may not always advocate "for reunification and may believe the ward's wishes do not align with [the ward's] best interests." *K.J.D.*, 2013-Ohio-610 at ¶51. Here, it is pure speculation to state that a guardian *ad litem* appointed for appellant would have recommended that the trial court deny appellee permanent custody.

{¶ 25} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

B.

ABANDONED

{¶ 26} The text of appellant's second assignment of error suggests that appellant argues that sufficient evidence does not support the trial court's finding that she abandoned the child. However, the body of appellant's second assignment of error focuses on the weight of the evidence—not on its adequacy—supporting the court's abandonment finding. Thus, we believe that the manifest weight standard of review is the appropriate standard of review applicable to appellant's second assignment of error. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-

2179, 972 N.E.2d 517, ¶10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541

(1997), paragraph two of the syllabus (explaining that the concepts "'legal sufficiency'" and

"'manifest weight'" are "'both quantitatively and qualitatively different'").

1.

Standard of Review

{¶ 27} A reviewing court generally will not disturb a trial court's permanent custody

decision unless the decision is against the manifest weight of the evidence. *In re M.H.,* 4th Dist.

Vinton No. 11CA683, 2011–Ohio–5140, ¶29; *In re A.S.,* 4th Dist. Athens Nos. 10CA16,

10CA17, 10CA18, 2010–Ohio–4873, ¶7.

> "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'"

*Eastley* at ¶12, quoting *Thompkins* at 387, quoting Black's Law Dictionary 1594 (6th ed.1990).

{¶ 28} When an appellate court reviews whether a trial court's permanent custody

decision is against the manifest weight of the evidence, the court ""'"weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving

conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest

miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'"' *Eastley* at

¶20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001),

quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717

(1st Dist.1983). *Accord In re Pittman,* 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶ 23–24.

{¶ 29} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶43. "Clear and convincing evidence" is: "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." (Citations omitted.) *In re R.M.,* – Ohio App.3d –, 2013–Ohio–3588, 997 N.E.2d 169, ¶55 (4th Dist.).

{¶ 30} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541,

quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing

court should find a trial court's permanent custody decision against the manifest weight of the

evidence only in the "'exceptional case in which the evidence weighs heavily against the

[decision].'" *Id.,* quoting *Martin* at 175; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721

N.E.2d 995 (2000).

{¶ 31} Furthermore, when reviewing evidence under the manifest weight of the evidence

standard, an appellate court generally must defer to the fact-finder's credibility determinations.

As the *Eastley* court explained:

> "[I]n determining whether the judgment below is manifestly against the
> weight of the evidence, every reasonable intendment and every reasonable
> presumption must be made in favor of the judgment and the finding of facts. * * *
>         If the evidence is susceptible of more than one construction, the reviewing
> court is bound to give it that interpretation which is consistent with the verdict and
> judgment, most favorable to sustaining the verdict and judgment."

*Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶21, quoting *Seasons Coal*

*Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio

Jur.3d, Appellate Review, § 60, at 191–192 (1978).

2.

Permanent Custody Principles

{¶ 32} A parent has a "fundamental liberty interest" in the care, custody, and

management of his or her child and an "essential" and "basic civil right" to raise his or her

children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re*

*Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.,* 113 Ohio St.3d 88,

2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *In re D.A.* at

¶11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the

ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In*

*re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300

So.2d 54, 58 (Fla.App.1974).  Thus, the state may terminate parental rights when a child's best

interest demands such termination. *In re D.A.* at ¶11.

{¶ 33} Before a court may award a children services agency permanent custody of a

child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the

hearing is to allow the court to determine whether the child's best interests would be served by

permanently terminating the parental relationship and by awarding permanent custody to the

agency.  *Id.*  Additionally, when considering whether to grant a children services agency

permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151,

as set forth in R.C. 2151.01:

> (A) To provide for the care, protection, and mental and physical
> development of children * * * whenever possible, in a family environment,
> separating the child from the child's parents only when necessary for the child's
> welfare or in the interests of public safety;
> (B) To provide judicial procedures through which Chapters 2151. and
> 2152. of the Revised Code are executed and enforced, and in which the parties are
> assured of a fair hearing, and their constitutional and other legal rights are
> recognized and enforced.

3.

Permanent Custody Framework

{¶ 34} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to

a children services agency if the court determines, by clear and convincing evidence, that the

child's best interest would be served by the award of permanent custody and that any of the

following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary
> custody of one or more public children services agencies or private child placing
> agencies for twelve or more months of a consecutive twenty-two-month period, or
> has not been in the temporary custody of one or more public children services
> agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶ 35} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶ 36} In the case at bar, appellant does not challenge the trial court's best interest finding. Therefore, we do not address it. Instead, appellant argues that the evidence fails to show that the she abandoned her child.

{¶ 37} R.C. 2151.414(B)(1) requires the trial court to find the existence of only one of the four factors. *In re J.P.B.,* 4th Dist. Washington No. 12CA34, 2013-Ohio-787, ¶33, citing *In re W.W.,* 1st Dist. Hamilton Nos. C–110363 and C–110402, 2011–Ohio–4912, ¶54 (observing that if one of R.C. 2151.414(B)(1) factors exists, court need not find that other (B)(1) factors apply). Consequently, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, a trial need not also find that (1) the child cannot or should not be placed with either parent within a reasonable time, (2) the child is abandoned, or (3) the child is orphaned.

{¶ 38} Here, the trial court determined that R.C. 2151.414(B)(1)(d) applied. Appellant has not challenged this finding. Because the court's R.C. 2151.414(B)(1)(d) finding demonstrates the existence of one of the R.C. 2151.414(B)(1) findings, any alleged error associated with the court's alternate R.C. 2151.414(B)(1)(a) abandonment finding did not prejudice appellant's substantial rights, and we must disregard the alleged error. Civ.R. 61 (stating that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"); *In re A.H.*, 9th Dist. Lorain No. 13CA010454, 2014-Ohio-552, ¶9 ("Because the "12 of 22" finding was sufficient to support the first prong of the permanent custody test, any error in the trial court's alternate finding under R.C. 2151.414(E) would not constitute reversible error because it did not result in any prejudice to Father.").

{¶ 39} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## IV.

## CONCLUSION

{¶ 40} Based upon the foregoing reasons, we overrule appellant's two assignments of error and affirm the trial court's judgment.

                                                        JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment and Opinion.


By:_____
                                          Marie Hoover, Judge


## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.